949 F.2d 399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeanne DENNIS and Earl Sullivan, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 90-16413.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1991.
Decided Dec. 5, 1991.
 
 Before ALARCON, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This is an appeal of a district court ruling, after a bench trial, that the United States is neither liable to Jeanne Dennis for her injuries nor to Earl Sullivan for the loss of Ms. Dennis' consortium. Ms. Dennis was injured when she fell into a hole created by the rotting of wood that had been the base of a utility pole. The court ruled that the United States was not negligent because it exercised its duty of ordinary care, had neither actual nor constructive notice of the hole, and could not have discovered the hole through reasonable inspection. The plaintiffs appeal the court's decision, and we affirm.
 
 
 3
 The plaintiffs put forward three bases for reversal: first, they claim that some of the district court's findings of fact are in direct conflict with undisputed evidence and therefore are clearly erroneous; second, they dispute the court's conclusion that the United States was not negligent in failing to discover the hole; and third, the plaintiffs contend that the United States was on constructive notice of the existence of the hole and therefore is liable on a negligence theory.
 
 I. THE FINDINGS OF FACT
 
 4
 The plaintiffs claim that Finding Nos. 2, 4, 5, 10 and 11 are erroneous.
 
 
 5
 a) Finding No. 2: "Evidence of the precise origin of the hole is inconclusive."
 
 
 6
 As the plaintiffs note, the evidence clearly revealed--and the United States admitted--that the hole resulted from the decay of the underground remainder of a wooden pole. Though this evidence was undisputed, there was a conflict in the testimony as to whether the pole was a Navy telephone pole or a Guam Power Authority pole with a guy wire. Plaintiffs argue that the ownership of the pole is irrelevant to the "precise origin" of the hole and that, because there was no other dispute as to the origin of the hole, the court erred in finding that the evidence of the origin was inconclusive.
 
 
 7
 The district court's apparent interpretation of "precise origin" as encompassing the issue of ownership is not clearly erroneous. Evidence on the origin of the pole includes evidence about its ownership; and, because the base of the pole became the hole, it is neither erroneous or unreasonable for a judge to conclude that evidence about the origin of the hole included evidence about the origin (and therefore the ownership of) the pole. Simply stated, the words "precise origin" are sufficiently flexible and broad that the district court's Finding # 2 is not clearly erroneous.
 
 
 8
 b. Finding No. 4: "Plaintiffs failed to prove that a utility pole holding telephone lines had existed at that location."
 
 
 9
 As we noted in Section a, there was conflicting testimony (between plaintiffs' witnesses) as to whether the wooden pole in question held telephone lines or a guy wire supporting another pole. Under such circumstances, we cannot reject the conclusion that plaintiffs failed to prove that the pole held telephone wires. For this reason, Finding No. 4 is not clearly erroneous.
 
 
 10
 c. Finding No. 5: "Plaintiffs failed to prove that a portion of the pole had been above the ground subsequent to its removal or that the hole had ever been in a state that could have been discovered by reasonable inspection."
 
 
 11
 The first half of the Finding is clearly correct, even according to the plaintiffs' recitation of the facts. According to the plaintiffs, the wooden pole was broken during a typhoon (leaving a stump about three feet high) and later was cut off at ground level, leaving the base in the ground. Only the latter event could be called a removal, since the typhoon left a considerable portion above ground. Once the pole was removed (i.e., cut off at ground level), there was, by definition, no portion above ground. Thus, the plaintiffs could not have proved that a portion of the pole had been above ground subsequent to the removal of the pole, because the removal eliminated whatever stump had previously existed. The first half of this Finding is not clearly erroneous.
 
 
 12
 With respect to the second half of this Finding, there was evidence presented that the grass over the hole was indistinguishable from that over the surrounding ground, and that, as a result, the hole could not be detected other than by someone falling in it. Given the existence of this evidence, this half of the Finding is not clearly erroneous.
 
 
 13
 d. Finding No. 10: "Subsequent to each cutting, a Quality Assurance Evaluator (QAE) inspected the area to ensure the adequacy of the maintenance and to check for any apparent safety defects."
 
 
 14
 The only testimony on this issue was from a QAE who repeatedly stated that his job was to make sure that the grass was cut. The QAE also testified that he checked for safety defects, but the QAE was not clear whether he was concerned only for the safety of the workers or also paid attention to the safety of the area. Thus, though this aspect of the Finding may be exaggerated, it is not clearly erroneous.
 
 
 15
 Plaintiffs claim that there was no evidence presented that the inspections were conducted subsequent to each cutting, because the QAE who testified began his work in 1984. The QAE did indicate, however, that the inspections were a routine practice at the Navy. To the extent that the finding overstates the frequency of inspections as occurring after each cutting, any error is harmless. Routine inspections suffice to support the district court's ultimate finding of no negligence.
 
 
 16
 e. Finding No. 11: "Annual inspections were conducted and any safety hazards discovered by the inspections were corrected."
 
 
 17
 The plaintiffs assert that the only witness who testified about these inspections did not participate in them and did not state that safety hazards were corrected. Though it is true that the witness did not actually conduct the inspections and was somewhat vague about the scope of the inspections, his testimony as to the nature and frequency of the inspections could reasonably be interpreted as supporting this Finding. Thus, this Finding is not clearly erroneous.
 
 
 18
 II. THE RULING THAT THE UNITED STATES WAS NOT NEGLIGENT
 
 
 19
 We review a district court's determination on negligence under the clearly erroneous standard. Barnett v. Sea Land Service, Inc., 875 F.2d 741, 745 (9th Cir.1989). In this case, the court, applying the standard of ordinary care (which, the plaintiff admits, is the applicable standard of care), found that the United States fulfilled its duty of care by conducting reasonable inspections and maintaining the premises in a reasonably safe condition. In addition, the court found that the United States could not have discovered the hole through reasonable inspection. Both of these conclusions are reasonable in light of the evidence that the ground over the hole could not be distinguished from that over the surrounding area and that the United States inspected the area on a number of occasions. Because both conclusions are reasonable and each is sufficient to defeat a negligence claim, it was not clearly erroneous for the district court to hold that the United States was not negligent.
 
 III. CONSTRUCTIVE NOTICE
 
 20
 There is no need to consider plaintiffs' constructive notice argument; even if the plaintiffs are correct that the destruction of the pole put the United States on constructive notice that the pole had been removed, possibly improperly, the court's finding that the United States satisfied the standard of care by conducting reasonable inspections precludes a holding that the United States was negligent.
 
 
 21
 The judgment of the district court is affirmed.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3